UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**JUAN FLORES-CASTRO,**<br>　a/k/a Duende<br><br>　　　　Defendant. | **CASE NO. 2:17-CR-164(17)**<br><br>**JUDGE EDMUND A. SARGUS, JR.** |

**GOVERNMENT'S RESPONSE TO DEFENDANT JUAN FLORES-CASTRO'S MOTION IN LIMINE TO EXCLUDE PHOTOGRAHPIC EVIDENCE**

The United States, by and through undersigned counsel, hereby submits this response to Defendant Juan Flores-Castro's motion in limine (ECF No. 999) seeking to exclude photographic evidence related to the murder of Wilson Villeda. As explained below, the Court should deny the motion because it is both premature and fails on the merits.

**MEMORANDUM**

In February 2018, the grand jury returned the Second Superseding Indictment, which charges the defendant, Juan Flores-Castro, with one count of conspiracy to commit racketeering [Count 1]; two counts of murder in aid of racketeering [Counts 3 and 4]; and one count of murder through the use of a firearm during and in relation to a crime of violence [Count 5]. As relevant here, Count 3 charges Flores-Castro and twelve other members and associates of MS-13 with the 2015 murder of Wilson Villeda. Flores-Castro now moves to limit or, in the alternative, to prohibit the admission of any photos of the crime scene, Mr. Villeda's body, or his related autopsy. This motion is premature, however, and fails on the merits in any event.

1

## Background

### *The Murder of Wilson Villeda*

In November 2015, Flores-Castro and over a dozen members and associates of MS-13 murdered Wilson Villeda, a 17 year-old high school student. Mr. Villeda spent time with members of the Columbus clique of MS-13 and may have been interested in joining the gang. Flores-Castro and his co-conspirators had other ideas, however. They questioned Mr. Villeda's allegiance to MS-13 because of his tattoos, which they believed signaled an affiliation with a rival gang. Ultimately, they sought and received authorization from MS-13 leadership in El Salvador to kill the victim.

MS-13 members put their plan into action on the evening of November 14, 2015. That night, Flores-Castro and more than a dozen other MS-13 members and associates – several of whom traveled to Ohio from other states specifically to participate in this homicide – waited at and around 3350 Anita Street. One of the co-conspirators brought Mr. Villeda to this residence and, like another victim before him, he was taken into the woods of Innis Park and slaughtered. During the horrific attack, the gang members took turns stabbing, slashing, and cutting Mr. Villeda with a machete and other bladed weapons. One of the gang members took photographs of the victim's mutilated body on his cell phone and sent those pictures to other MS-13 members in California with a message that said, "I got a little crazy with the homies." The co-conspirators buried Mr. Villeda's body in a shallow grave near the burial site of another one of their victims. Medical reports described between 70 and 92 chop-like injuries to Mr. Villeda's head, torso, and extremities. The day after this homicide, the MS-13 members gathered to burn Mr. Villeda's clothing. The weapons that the group used during the murder were grounded down, and the remaining pieces were disposed of in another state.

*The Use of Photos at Trial*

The Government intends to use a limited number of photos regarding Mr. Villeda's murder to prove the allegations in Count 3, as well as the overall racketeering conspiracy from Count 1, which lists the same homicide as an overt act. That evidence includes photos that an MS-13 member sent to other gang members in California just after the homicide; photos of the process of locating and recovering Mr. Villeda's remains; photos of Mr. Villeda's body once it was eventually recovered from Innis Park; and select autopsy photos.

Procedurally, the Government proposes to use these photos in the same manner as in other large-scale racketeering / murder trials in this district, including the recent Short North Posse case, *United States v. Ledbetter, et al.* Under that procedure, the Government will seek to admit a complete "series" of photos for each homicide, while notifying defense counsel in advance which photos the Government seeks to publish to the jury. If defense counsel have objections to a particular photo(s) being published, they can raise those objections at sidebar, where they can be resolved expeditiously, and without the need for lengthy pretrial hearings or briefing. *See United States v. Ledbetter*, No. 2:14-cr-127, Trial Tr., Vol. VII, ECF No. 1075, PAGEID #6283-85 (publishing three photos of victim's body out of fifty-six photos taken from crime-scene series); *id.* at Vol. IX, ECF No. 1077, PAGEID #6651-56 (publishing just two photos of homicide victim).

The Government does not intend to publish *all* photos of victims, crime scenes, and autopsies that have been produced in discovery. Instead, the Government intends to publish only a limited set as to each murder to establish the "who, what, when, where, and how" of each crime. Nor does the Government intend to publish cumulative pictures of any victim, crime scene, or autopsy. Instead, the Government will limit the photos it seeks to publish to the jury to those that have independent evidentiary value.

**Legal Standards**

Motions in limine are designed to ensure fair and speedy trial management by excluding evidence that is clearly inadmissible. *In re E.I. du Pont de Nemours & Co. C-8 Personal Injury Litig.*, 348 F. Supp. 3d 698, 721 (S.D. Ohio 2016) (Sargus, J.). Given the fact-intensive nature of most evidentiary objections, "courts are generally reluctant to grant broad exclusions of evidence *in limine*, because a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Id.* (quotation omitted). To prevail on such a motion, a party must show "that the evidence is clearly inadmissible on all potential grounds." *Id.* Unless the movant meets this high bar, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id.* (quotation omitted). The decision to grant a motion in limine rests in the discretion of the district court, which can also defer ruling on such a motion or even change its ruling "when the evidence is actually offered and objected to at trial." *United States v. Luce*, 713 F.2d 1236, 1239-40 (6th Cir. 1983).

All relevant evidence is generally admissible; nevertheless, Rule of Evidence 403 grants district courts discretion to exclude such evidence if its probative value is substantially outweighed by the risk of unfair prejudice. *United States v. Gibbs*, 797 F.3d 416, 422 (6th Cir. 2015). The term "unfair prejudice" does not, however, encompass "the damage to a defendant's case that results from the legitimate force of the evidence." *United States v. Ford*, 761 F.3d 641, 648 (6th Cir. 2014) (quotation omitted). Instead, the term refers only to evidence which tends to lead jurors to make decisions on an improper basis. *Id.* As such, Rule 403 "favors admissibility." *United States v. Jones*, 554 F. App'x 460, 473 (6th Cir. 2014) (White, J., concurring). District courts are afforded "great deference" in conducting the balancing test required under Rule 403. *United States v. Howard*, 621 F.3d 433, 457 (6th Cir. 2010) (quotation omitted).

**Argument**

As explained below, the Court should deny Flores-Castro's motion in limine as premature while allowing him to raise similar objections at trial when, in all likelihood, the parties may come to an agreement over which photos should be published to the jury. Even if the parties cannot agree, the Court will be in a far better position *at trial* to assess the probative value of any photos, to compare that probative value to the substantial risk of unfair prejudice, and to render a decision under Rule 403. Alternatively, to the extent the Court wishes to reach the merits of Flores-Castro's argument now, it still fails. Courts across the country have deemed similar photos of victims, crime scenes, and autopsies admissible under the balancing test required by Rule 403.

**I.   The Court Should Deny Flores-Castro's Motion as Premature While Allowing Him to Raise any Objections to the Photos at Trial.**

The Court should deny Flores-Castro's motion in limine because it is premature. The trial is still roughly a year away. At this early juncture, neither the Government nor the Court can be sure of how many of the remaining four defendants will proceed to trial; how many murders will still be at issue; or the quantum and quality of evidence as to each of those murders, including the murder of Wilson Villeda. Given this uncertainty, it seems far-fetched to suggest that the Court can determine which photos (if any) are "clearly inadmissible on all potential grounds" right now, *In re E.I. du Pont de Nemours & Co.*, 348 F. Supp. 3d at 721, especially under the fact-intensive balancing test that Rule 403 requires. Instead, the Court should reserve that determination for trial, when "questions of foundation, relevancy and potential prejudice can be resolved in the proper context." *Id.* (quotation omitted); *see Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("A better practice is to deal with questions of admissibility of evidence [under Rule 403] as they arise.").

Indeed, that is exactly the proposal the Government puts forth in this case—a fact-bound inquiry during the trial itself, when issues of relevancy, probative value, and the substantial risk of unfair prejudice can be fairly and efficiently examined.  An example from a sidebar conference discussing one of the murders in the Short North Posse case may prove helpful:

| | |
|---|---|
| Mr. Gatterdam: | Your Honor, I don't have any objection on authenticity because I think [the detective] testified these are the photos she took.  But as I flip through [the series] I think my objection is going to be the cumulative nature of several of the pictures with the alleged victim's body being shown. . . . All seem to show very similar pictures of the victim's body.  They're very gruesome, they're very graphic, and I don't think the jury needs to see multiple pictures. |
| Mr. Martinez: | Your Honor, as Detective Taliaferro testified, there are 56 photos.  I do not intend to show all 56 photos.  This is why we approached it this way.  I understand there are many photos of the dead body.  I intend to show three of them. |
| The Court: | Okay.  And I take it that the three will have different – |
| Mr. Martinez: | Different angles and views, exactly right. |
| The Court: | All right.  Do you know right now, Mr. Martinez, which specific body shots you intend to show? |
| Mr. Martinez: | Yes.  Let me be clear.  So the first one is [number] 18[,] which is [the] view into the entry into the room.  The second one is [number] 50 to show the wounds to the body and the last one is [number] 49 which is so you can see the person's face. |
| The Court: | Okay.  I'm going to allow those three.  If you object to those, you may make your objection for the record.  But I think that those three show different vantage points of the body and it is not cumulative in that respect.  So I will be inclined to allow him. |

*Ledbetter*, ECF No. 1075, PAGEID #6283-84.  Given the number of murders at issue in this case, resolving any evidentiary objections to victim/crime scene photos in real time, as proposed, will be more efficient and practical than engaging in a never-ending series of pre-trial briefing and hearings.  For these reasons, the Court should deny the motion in limine as premature.

6

**II.     Alternatively, the Court Should Deny the Motion in Limine Under Rule 403.**

Alternatively, to the extent the Court wishes to rule on the merits of Flores-Castro's motion now (before trial), the Court should deny the motion under Rule 403.  The probative value of a limited number of victim, crime scene, and autopsy photos regarding the Wilson Villeda murder is not substantially outweighed by the risk of unfair prejudice.

The Sixth Circuit and other courts across the country routinely permit photos of murder victims, crime scenes, and related autopsies to be admitted at trial, even against challenges under Rule 403.  For example, in *United States v. Brady*, 595 F.2d 359 (6th Cir. 1979), the Sixth Circuit affirmed the district court's decision to admit several photographs of three victims of an armed bank robbery "lying on the floor of the bank in pools of their own blood."  *Id.* at 361.  The court acknowledged that while the photos were "not pleasant to behold," they were nevertheless probative of the fact that the killings occurred in the courses of a bank robbery.  *Id.* at 361-62.  There, the defendant even stipulated to the fact that the victims "died by gunshot wounds to the head," but the court still found the probative value of the photos was not outweighed by the substantial risk of unfair prejudice under Rule 403.  *Id.* at 362.

Likewise, in *United States v. Hollie*, 198 F.3d 248 (6th Cir. 1999) (table), the Sixth Circuit affirmed the district court's decision to admit three photos of a shooting victim "lying on a table in the morgue."  1999 WL 1021860, at *7.  There again, the defendant had not disputed the cause of death or even the bullet path.  *Id.*  Nevertheless, the court of appeals still deemed the probative value of the photos, which showed "[the victim's] head at different angles, focusing on the entrance and exit wounds," was not outweighed by the substantial risk of unfair prejudice because the Government sought to use the photos for a different purpose—namely, showing that a third party could not have fired the fatal shots.  *Id.*  Thus, the photos "were properly admitted."  *Id.*

Finally, in *United States v. Brown*, 54 F. App'x 201 (6th Cir. 2002), the Sixth Circuit affirmed admission of several photos of murder victims lying on the floor of a body shop, despite arguments that the photos were "highly prejudicial" and designed to appeal only "to the jurors' prejudices about the nature of the killings." *Id.* at 208-09. The court rejected that argument and held that the photos were highly probative in showing that the murders were committed in furtherance of the charged drug-trafficking conspiracy. *Id.* at 208. This was so because the photos helped prove that the victims (1) had been lured by the co-conspirators to a particular place; (2) died of multiple wounds; and (3) died in furtherance of the alleged conspiracy. *Id.* at 209. Given the probative nature of the photos, and the fact that the Government and the district court excluded "those that were duplicative," the Sixth Circuit found their admission proper. *Id.*

Other courts have reached the same conclusion in a variety of cases involving gruesome photos. In *United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998), the court affirmed admission of thirteen photos of victims who were killed in the World Trade Center bombing—some of which "were facial close-ups of the bombing victims," and two of which "showed victims' bodies as they lay in stretchers," including one who "was clearly pregnant." *Id.* at 122-23. Despite noting that the "graphic depictions of the corpses" was "[u]ndeniably . . . disturbing," the court upheld their admission. *Id.* The court noted that there was no doubt the "photographs of the victims were shocking, and a significant amount of such evidence was admitted." *Id.* at 123. Nevertheless, the court found the evidence had "substantial probative value" regarding the nature and location of the explosion before reiterating that "[p]robative evidence is not inadmissible solely because it has a tendency to upset the trier of fact." *Id.* Critically, the court held that the defendants' offer to stipulate that the explosion caused injury and death did not limit the Government's ability to rely on the photos. *Id.* at 122 (citing *Old Chief v. United States*, 519 U.S. 172 (1997)).

8

The Fifth Circuit reached the same conclusion in a case involving a color photograph of a murdered child's lacerated heart. *United States v. Bowers*, 660 F.2d 527, 529-30 (5th Cir. 1981). There, the court acknowledged that "the photograph had the potential to inflame the jury," but affirmed its admission any way since it was "no more inflammatory than photographs that portray the sort of death suffered by the victim in this or any case where the circumstances surrounding death are at issue." *Id.* at 529. Here again, the court took care to note that defendants cannot avoid the full force of harmful evidence—including gruesome photos—by stipulating to certain facts. *Id.* at 530 ("We hasten to add that the mere fact that appellant stipulated with the government as to the cause of death did not preclude the government from offering proof on that issue.").

The list goes on. *E.g.*, *United States v. Boise*, 916 F.2d 497, 504 (9th Cir. 1990) (finding autopsy photo of murdered child admissible under Rule 403); *Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989) (finding that gory photos of crime victims are not generally a violation of defendant's right to fair trial). *Cf. Nettles v. Wainwright,* 677 F.2d 410, 414-15 (5th Cir. 1982) (allowing photo of victims covered in blood, semi-conscious, with clothes shredded by assault).

Here, of course, the photos in question are "extra probative" of the charged offenses. After all, the Government must not only prove that Flores-Castro and other MS-13 members and associates murdered Wilson Villeda, as alleged in Count 3. The Government must *also* prove the existence of MS-13 as a racketeering enterprise, and the fact that Flores-Castro and others agreed to conduct the affairs of that enterprise through a pattern of racketeering activity, as alleged in Count 1.[1]

---

[1] As the Sixth Circuit has explained, the introduction of potentially disturbing evidence is par for the course in racketeering cases. *See United States v. Gallo*, 763 F.2d 1504, 1525 n.32 (6th Cir. 1985) ("Given the frequently violent nature of crimes committed in furtherance of the illicit activities Congress addressed in its enactment of the RICO and CCE statutes, we do not find an abuse of discretion by the trial court in refusing to exclude under Rule 403 evidence of those violent crimes committed . . . in furtherance of the [enterprise].").

9

A quick review of the Second Superseding Indictment shows that the enterprise was described in ways which render the Villeda photos (showing multiple chop-like injuries) even more probative to the overall racketeering conspiracy. Count 1 describes the enterprise, in part, as follows:

> 12. Violence is a central tenet of MS-13. The organization's motto, "mata, viola, controla," means "kill, rape, control." ***MS-13 members are expected to promote and protect the organization's reputation and status by any means necessary***, such as by committing acts of intimidation and violence, ***up to and including murder.*** Targets of violence include rival gang members . . . [and] individuals who show disrespect to the gang or are otherwise perceived as a threat . . . . ***Historically, MS-13 members and associates have committed the murders and other violent acts using machetes, knives, and similar bladed weapons*** in order to intimidate and instill fear in others.

(Second Superseding Indictment, ECF No. 179, PAGEID #680-81, ¶ 12 (emphasis added)).

Likewise, when describing the "means and methods of the enterprise," the Grand Jury found that "MS-13 members and associates committed . . . murder" and "***armed themselves with*** . . . ***bladed objects*** and other weapons in order to increase their ability to commit acts of violence . . . ." (*Id.* at PAGEID #682-83, ¶¶ 23 & 29).

Given these allegations, and the other allegations that the Government must prove (including the eerily similar murder of Carlos Serrano-Ramos, who was also stabbed to death and buried in Innis Park, as alleged in Count 2), is it any wonder that the Government seeks to introduce *some* photos of Mr. Villeda's body, which MS-13 members used to brag about the killing? Or where he was buried and later found? Or how he was killed, and how long ago it occurred? Or the number, nature, and location of his many wounds? This evidence is *highly* probative of the charged offenses. *See Brown*, 54 F. App'x at 208-09.

At the end of the day, this is a murder case. The Government will seek to introduce significant and damaging evidence of those murders at trial—some of which will be uncomfortable for the defendants, including Flores-Castro, and perhaps for the jury too. But that does not render the evidence inadmissible. *See United States v. Rathburn*, 771 F. App'x 614, 627 (6th Cir. 2019) ("[P]robative evidence is not unfairly prejudicial simply because it is gruesome or disturbing." (quotation omitted)). This is especially true where, as here, the Government has put forth a good-faith procedure for reducing the cumulative effect of that evidence when it comes to publishing photos of murder victims, crime scenes, and autopsies. *See Brown*, 54 F. App'x at 209.

## CONCLUSION

For the foregoing reasons, the Court should deny Flores-Castro's motion in limine. His evidentiary objections are best raised, if at all, during trial.

    Respectfully submitted,

    DAVID M. DEVILLERS
    United States Attorney

    s/ Noah R. Litton
    BRIAN J. MARTINEZ (CA 224587)
    NOAH R. LITTON (0090479)
    Assistant United States Attorneys
    303 Marconi Boulevard, Suite 200
    Columbus, Ohio 43215
    Office: (614) 469-5715
    E-mails: Brian.Martinez2@usdoj.gov
             Noah.Litton@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Response to Defendant Juan Flores-Castro's motion in limine was served electronically upon all counsel of record this 16th day of March, 2020.

    s/ Noah R. Litton
    NOAH R. LITTON (0090479)
    Assistant United States Attorney